Our first case for argument today is 25-1207 Zilkr Cloud v. Cisco Systems. But before I have you come up, I want to say thank you to Judge Moore from the Southern District of Florida who is joining us today by designation on this panel. We're very much excited to have you here. Thank you. Okay, so Mr. Milliken, please proceed. Thank you. Good morning, Your Honors, and may it please the Court. I'll begin with claim construction. The Board's errors there require reversal or, at the very least, vacater. The key question here is this. Are provision and activate, as used in this patent, broad enough to encompass merely accessing or logging in to an existing service? I'm sorry, I'm jumping right in. Are you arguing those two terms separately or together? I think you're arguing them separately, but I want to make sure because your first sentence suggested they go together. They do mean slightly different things. I think they are very closely related and the parties treated them below is very closely related because the request to provision is when the user asks for. Can I just ask you this? If I didn't agree with you on request to provision, would I then be bound to not agree with you on activate? No, I don't think that our argument requires winning on the construction of both. I think if you interpret either the request to provision or the activate term to require adding a new service, something that the user didn't have before, then the Board's construction is wrong and Cisco's infallibility theory fails. Now, the Board seemed to think that these terms are broad enough to encompass merely accessing or logging in to an existing service. But it's very unclear why. The Board adopted a construction of these terms. You can find the construction at Appendix 20 and 25. I definitely want to hear about your construction, but as a housekeeping matter, you started by saying that you wanted us to reverse. How would we reverse if we agree with you that the Board got the claim construction wrong? This is an obvious miscase with tons of potential factual issues. How would we reverse as opposed to vacate and remand? Cisco only has one argument under our construction of the request to provision and activate terms, and that theory is that when Bodart, the virtual assistant, configures instant messaging or e-mail to be available through the virtual assistant, that would qualify as a new service under our construction. That theory fails as a matter of law because the claim requires that the second service be activated with the second provider, which is the underlying provider of the service, like Google for Gmail or AOL for AOL Instant Messenger. But in Cisco's alternate theory— The Board didn't address any of this. That's correct. The Board didn't address it. And if the court believes there's a factual issue there, then the court is free to vacate and remand for the Board to address Cisco's alternate theory. We would be fine with that result. We think the record is clear that the theory fails as a matter of law, and so that's why we're asking for reversal. You keep saying as a matter of law. I mean, it's the fact finding. You're just saying that the facts are so overwhelmingly one-sided that you think the court should go ahead and make the fact finding on appeal. Well, I say as a matter of law because I think the claim language forecloses their argument in that it requires that the second service be activated with the second provider, whereas in their alternate theory, the second service is being activated with the Bodart virtual assistant. Do you know of any cases that are similar to this one where our court has done what you're asking for, that is, go ahead even though we think the claim construction is incorrect, we go ahead and then make a final conclusion on obviousness in an IPR proceeding? I'm not aware of, off the top of my head, of a case where the claim construction was vacated and a factual finding was made in the first instance, but there are several cases like a RENDI and DSS technology, for example, where the court found that the board's analysis was wanting but said that there was only one reasonable view of the application of the art to the claim. That's pretty atypical, right? I think that's fair that it is atypical. Do you want to talk about claim construction? Sure. So the board adopted the following construction of the provision and activate terms, which I want to point out is different from the construction that either party proposed in the proceedings below. The board's construction is, quote, it includes a request to add new applications and services or manage existing applications and services to which a client has already subscribed. Now the board didn't explain precisely what it meant by that construction. It also didn't explain why Cisco's prior art satisfies that construction. And so as a result, the board didn't answer the question that really matters here, which is do provision and activate encompass merely logging in to an existing service, which is how Cisco argued its case below. And to explain why that is sort of the crux of the dispute, I'll briefly recap the claims in Cisco's theory. So the claims require a telephone service, a telephone system with a server that receives a request to provision a service like instant messaging or e-mail and then in response to that request activates the service and integrates the service with the user's telephone service. Can I just ask, what is your proposed construction? Our proposed construction is that the provision and activate terms involve a user request to add a new service, and that would include activating a new subscription or a new account for an existing service. So as long as the user is getting something that they didn't have before, that would qualify as provisioning or activating under our construction. So in other words, just to make sure I understand, you're saying under that definition it would include activating a service that maybe the user is previously subscribed to but not through this middleman service that's used in the, I want to make sure I use the right words. The virtual assistant. Yes, the virtual assistant. That I think would not qualify because if all the user is doing is logging into an existing account, like an existing AOL account, for example, through the virtual assistant, I think that's just using the preexisting service. That wouldn't qualify as activating under our construction. So my understanding of yours was that you thought that the board erred by adding the language or manage existing applications and services to which a client has already subscribed. Yes. Am I right in that? Yes, that's correct. Okay. So why did the board err in construing activate to include that phrase? Because I'm looking at the plain-claim language, the specification. What is your argument? Sure, because the patent does not support reading these terms provision and activate to refer to services that the user already has, to refer to doing anything with services that the user already has. I want you to be more specific. Why? What language in the claim are you relying on? What part, I mean, what in the specification are you relying on? So one of the clearest points in the specification is Column 9, Lines 41 through 46. This is at Appendix 88, and this is talking about the process for actually using a service. It says a request by the first user to utilize the second service may be received. Then it says it may be assumed that the second service has already been activated. So the patent is setting forth an order of operations here. First, the service is activated, and that which is activated was not activated before. The user didn't have it before. And then after the service is activated, that's when the user logs into it, uses it, manages it. The terms access, utilize, manage, those are terms that the patent uses to refer to actions that are taken with respect to existing services, whereas when the patent uses words like activate or add or provision, it's talking about new services that the user did not previously have. You can see this, for example, at Column 6, Lines 45 to 62. That's at Appendix 86. There's an explicit discussion of activating new services. There's a similar disclosure at Column 7, Lines 22 through 26 at Appendix 87. And on top of that, at Appendix 86, Column 5, the patent explicitly equates activated services to ones that the user is subscribed to and then inactive or deactivated services to refer to services that the user doesn't have anymore. So I've read the specification and I've highlighted every time the word activate and provision is used, okay? I did the same thing, Your Honor. And there's one – I want to get your thoughts on one of them.  I mean, I agree with you that the word is used quite a lot. Activate, provision, not so much. But activate is used quite a lot. And every time it's used, it's used in the manner in which you were saying. But there is one circumstance in Column 6, actually a couple of circumstances where instead of just saying activate, the specification says over and over again, activate the new application, activate the new application. One implication of that could be that because they had to say the new application, the word activate is not so limited. And I just want to hear what your response is to that. I think that that would not be a reasonable inference to draw because there's nowhere in the specification where it is implying in any other way that a service that the user already has is being activated. There's no embodiment described in this patent where it uses the word activate to describe a service that the user clearly already has. So the only thing, the only way that one could get to a conclusion that activate encompasses existing services would be to draw a negative implication from the fact that in a couple of spots it says activate new applications and then in some spots it just says activate applications without specifying new. I think that would be a very thin reed on which to hang a claim construction. So is your view maybe that activate when it's used later in the specification after saying activate the new applications is just using a shorthand?  I think the new part is implicit in the specifications, the descriptions elsewhere of what it means to activate a service. Yes. Is there any language in the claim that you would point to support that activate can't mean just normally opening up or accessing? So I think I'd point to the other term that we've been discussing, which is provision, which is not explicitly defined in the patent, but it is defined in a dictionary that's in the record at Appendix 1898. And what this telecom dictionary says is that provisioning is, quote, the act of acquiring telecommunication service from the submission of the requirement through the activation of service. And then it goes on later to say that provisioning is synonymous with initiation. And so that is consistent with our view that when this claim is talking about provisioning and activating, you're talking about getting a new service that the user didn't have before. And we've reviewed the board. The board did not find that dictionary definition to be dispositive of the issue, and it's extrinsic evidence, right? So I just want to ask you about the standard review I applied to that because I think that's extrinsic evidence, and I have to review that for substantial evidence. Do you agree? I agree that the court would review any findings based on extrinsic evidence for substantial evidence. However, the board didn't analyze this dictionary definition at all. It did cite it when it was recapping the party's arguments. It cited the definition. But when the board was actually analyzing the correct construction of the claim, the board didn't come back to the dictionary definition at all. It didn't interpret it. It didn't say we find this unpersuasive. And so I'd submit there is no factual finding based on extrinsic evidence to which this court ---- Well, they found the opposite of what you wanted. They identified the extrinsic evidence in your favor but found the opposite. They didn't say that they ---- They didn't expressly articulate that we disagree with your dictionary, but they said there's a dictionary that says this. We conclude that the other construction is right. I'm missing the logical leak that you think needs to be present in the opinion. So there is at ---- The board's analysis on this point starts at Appendix 15. The board begins by recapping the party's arguments. The board says about a third of the way down, Appendix 18, petitioner argues that patent owner's only other evidence is a website definition for provisioning dated after institution of this proceeding. And then the board continues summarizing arguments, and then it does its own analysis. It never refers back to that dictionary definition. It never says we adopt petitioner's argument about that dictionary definition. But it concludes that the claim construction is not what you want it to be. Correct. So that's a determination. Yes, that is reviewed de novo. My point is there are no factual findings specifically based on this dictionary definition that would introduce any layer of substantial evidence review into the equation. That's my argument. I see that I'm well into my rebuttal time. If the court has any further questions, I'm happy to answer them. Otherwise, I will resolve the balance. Sounds good. Thank you. Okay, Ms. Zhu, please proceed. Good morning, and may it please the court. So to provide context for this claim construction issue, the prior art discloses an initial configuration of the virtual assistant to be able to access services like instant messaging and email by confirming login credentials. And so that is provisioning and activating for the first time in the telephone system. And that is what is required by the claim. And so Zilker here today proposes that the claim construction must include adding new services, and that is not supported by the claims or the specification. If we look at the language of Claim 1, it does not say new service. It says that the service is a second service. Can I ask you something? What is activate then? I'm focusing on activate. Let's forget about provision for a minute because I think activate is your harder argument. Sure. So activate. It says in the claim you're activating the second service, and then there's another limitation that says associating the second service with the first telephone number. So activating can't be associating, and associating has to occur after activating. I'm just wondering what meaning are you giving this word if it doesn't mean activating a new application? Sure. So activate would mean to make available. So the request obviously is the request to make available, and the activating is actually making that service available somehow. Is that the construction you proposed before, to make available? I think the construction before was similar, like turn on or deactivate. That is obviously not the construction. You can't have a new construction now. Adopted. Yeah, what was your construction below? Sorry, Your Honor. That's okay. Take your time. Your construction below was performing an action that causes a provider to deliver or provide a requested service. Yes. So, yes, I do say that right there. Thank you. And so, again, delivering or providing the requested service. And so here the board construed the term to mean manage existing service, and manage existing service would encompass providing or delivering the service that is activated for the first time in a telephone system. Does that make sense to manage and then associate the second service with the first telephone number? Is there anything to close in the specification about the order of those two steps? I don't see anything in the specification that teaches that. That's why I'm asking. Yeah, so I think there is nothing that directly addresses it in the way that we're looking for. I think the closest thing is in the discussion of Figure 8 at Column 10. That is the process of activating a service, and so it includes activating the service by sending information about the user to the second service and then setting up information to be able to allow the user to connect with the service and use that service in the future. And you're saying that's managing? So that would fall within the scope of managing because it's an existing service, but you are managing that service to be allowed to use with a new system. Now, do you agree the specification teaches activating and managing as being different things? I mean, throughout the specification it does say manage, but it also says activate, and the figure that you're relying on, 8, is specifically for activating a service for a first user. So, yes, it does. The specification says at Column 10 that the request to activate is performed by generating a request to log into the storefront. And we see in the specification at Column 9, lines 9 through 20, that within the storefront you can manage existing services and add new services, and so that would be within the scope of services that are available to activate within the storefront. The hard thing for me is the plain meaning of activate to me just implies something new, not just accessing an existing thing. Like, I think about logging onto email, and I don't think that's the same thing as activating email. Activating an email is creating a new email account, but logging into email is accessing an email account. And so for me, it's a plain meaning thing. And, by the way, I do feel a little bit sorry for you because the board pulled this out of thin air, this construction. Like, it came out of nowhere. Like, this was not your construction, and here you are having to defend it. So, you know, I get that. But to me, just the plain meaning of activating is I'm struggling to see that word the way the board saw that word. Sure, and so to try to separate your question kind of into two points. First, you can activate an existing account. It is not limited to establishing a new account or a new subscription. For example, you could have an existing account that was deactivated. So then you would need to reactivate the account. You can also activate a service by allowing the service to be accessed within a new device. And when you're doing that, you're configuring the new device to be able to be used with that second service for the first time. So, again, it's something that happens for the first time. That device isn't available to be used at first, and then you set it up so that it is available to be used later. Our position is not that merely logging in is activating. It is the process of configuring the telephone system in the prior art. It's a virtual assistant to be able to access the second service in the first instance. When I read the specification, there's examples where it's very clear that the word activate is very clearly referring to activating a new service. It couldn't be anything else. It couldn't be read any other way. And then there's some examples where maybe it could be read the way you are interpreting it, but it's not definitively so. I don't see a disclosure of a single embodiment in which the word activate is used to refer to just accessing something that the user's already subscribed to. Am I missing anything? No, you're not missing anything. There is an inference that you have to make when reading the claims and the specification, but the claims and specifications show that when the patentee was referring to a new service, it expressly said so. We see that in, for example, dependent claim four, where the patentee is specifically specifying a new service. And then we also see that in the embodiments that you are referring to, where the user is expressly reciting a new service. And just to note, the specification makes it really clear when it intends to be a new service. For example, at column seven, lines 24 to 26, it says, for the purposes of this discussion, it will be assumed that the subscriber has requested new services. I'm just going to your claim differentiation argument. You agree that it's not a perfect claim and differentiation argument because of the fact that the claim is introducing a new concept, which is the United Storefront, right? Yes, I agree it's not a perfect claim differentiation argument, but what claims three and four show us is that there are parallel limitations. So in claim three, you have the storefront that allows you to manage existing services. And then in claim four, you have the storefront that allows you to add new services. And both of these claims are dependent on claim one, which shows us that the scope of services is existing services and new services. But there's no storefront in claim one. There is not a storefront in claim one, but at column 10, lines 12 to 17, it says that you request to activate in the storefront. And so that's the hook in the specification that ties the storefront to the request to activate and provision. The extrinsic evidence also shows that the request to provision and activate can be an existing service. The board cited the deposition testimony of Zilker's expert, Dr. Mattesetti, where he testified that you could deactivate features or change features in an existing subscription. That is Appendix 17, citing Appendix 1444 to 45. And to quickly address the dictionary definition, the TIA glossary at Appendix 1898, that also supports the board's construction. This is the provisioning definition. Yes, it's the provisioning definition. And it says that you can alter the state of an existing service. So it also says that. It doesn't say new service. If the court has no further questions, Cisco respectfully asks the court to affirm the board's decision. Thank you. Thank you, Ms. Phil. Mr. Milliken, you've got some rebuttal time. Thank you, Your Honors. I'll make three brief substantive points and one procedural point. 59 seconds. Go. Substantively, first, I believe my friend stated that they were not arguing that merely logging in is activating. That definitively was their argument. You can see that clearly at Appendix 136 to 137. Second, my friend referred to Dr. Mattesetti's testimony in the dictionary definition and the reference to changing the nature of an existing service by, for example, adding features. That comfortably fits within our construction. We agree that activate is broad enough to encompass adding new features to a service that the user already has because the user has something different. And Dr. Mattesetti was also very clear in his deposition testimony that he believed merely accessing or logging in would not qualify as activating it. Third, Judge Stoll, you pointed to another part of the claim that I want to emphasize that supports our construction. The last clause said associate the second service with the first telephone number. If the service hadn't been already activated, it wouldn't need to be. Or if the service wasn't new, it wouldn't need to be associated with the telephone number. Finally, I see I'm out of time, but if I may make one last point. My friend said that under the board's construction that encompasses managing existing services, she said that would encompass logging in. It's not at all clear to me why that's correct, and that goes to our APA argument that the board simply didn't explain the reasons for its conclusion here. Thank you, Your Honors. I thank both counsel. This case is taken under submission.